UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KELLY J. TAYLOR,

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

Civil Action 2:19-cv-4509
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Kelly J. Taylor ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying his

application for a period of disability, disability insurance benefits, and supplemental security

income.  This matter is before the undersigned for a Report and Recommendation on Plaintiff's

Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No.

14), and the administrative record (ECF No. 9).  For the reasons that follow, it is

**RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the

Commissioner's decision be **AFFIRMED**.

### I.      PROCEDURAL HISTORY

Plaintiff protectively filed his application under Title II of the Social Security Act for a

period of disability and disability insurance benefits on March 21, 2016.  He filed an application

under Title XVI for supplemental security income that same day.  In both applications, Plaintiff

alleged a disability onset of January 6, 2012.  Plaintiff's applications were denied initially on

June 17, 2016, and upon reconsideration on October 21, 2016. (R. at 47–66, 69–90.) Plaintiff

sought a hearing before an administrative law judge. Administrative Law Judge Timothy G.

Keller (the "ALJ") held a hearing on June 21, 2018, at which Plaintiff, represented by counsel,

appeared and testified. (*Id*. at 12.) Vocational expert John R. Finch (the "VE") also appeared

and testified at the hearing. (*Id*.) On October 1, 2018, the ALJ issued a decision finding that

Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 9–25.) On

August 9, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's

decision as the Commissioner's final decision. (*Id*. at 1–3.) Plaintiff then timely commenced the

instant action. (ECF No. 1.)

Plaintiff now advances four contentions of error. (Pl.'s Statement of Errors, ECF No.

12.) Namely, Plaintiff asserts that the ALJ committed reversible error when he: (1) failed to

properly evaluate and consider Plaintiff's use of a cane (*Id*. at 6); (2) failed to properly evaluate

the opinion of his treating physician, Bruce A. Barker, M.D. (*Id*. at 9); (3) assessed a residual

functional capacity ("RFC") that is not supported by substantial evidence (*Id*. at 16); and

(4) failed to properly evaluate whether Plaintiff met or equaled Listings 1.02A and 1.06 (*Id*. at

19).

## II.    THE ADMINISTRATIVE DECISION

On October 1, 2018, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act. (R. at 9–25.) The ALJ first found that Plaintiff

meets the insured status requirements through March 31, 2017. (*Id*. at 14.) At step one of the

2

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

gainful activity since January 6, 2012, the alleged onset date of Plaintiff's disability.  (*Id*.)  At

step two, the ALJ found that Plaintiff had the following severe impairments: right hip fracture

status-post repair with continued nonunion/displacement; mild right hip degenerative changes;

and degenerative changes of the cervical spine.  (*Id.*)  At step three, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 15–16.)

At step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> C.F.R. 404.1567(b) and 416.967(b)[²] except occasional right foot controls[*];

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*,
475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and
answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the
   criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
   C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his
   or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual
   functional capacity, can the claimant perform other work available in the national
   economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264
(6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls. To be considered capable
of performing a full or wide range of light work, you must have the ability to do substantially all
of these activities. If someone can do light work, we determine that he or she can also do

> occasional climbing of ramps or stairs but never any ladders, ropes, scaffolds; and occasional stoop, kneel, and crawl.
>
> [*] The State agency erroneously found left-sided limitations due to hip fracture and deformity; however, the claimant's injury occurred on the right. The undersigned repeated this mistake at the hearing. However, it would not change the outcome of this decision. The resident functional capacity has been adjusted accordingly.

(*Id.* at 16.) In assessing Plaintiff's RFC, the ALJ considered the evidence of record, including Plaintiff's hearing testimony, treatment records and other clinical and laboratory findings, and medical opinion evidence. (*Id*. at 16–19.) As to the medical opinion evidence, the ALJ assigned "great weight" to the opinions of State agency medical consultants who reviewed Plaintiff's claim file on the basis that "these are the most consistent with and well supported by the evidence as a whole." (*Id.* at 18.) The ALJ assigned "little weight" to the opinion of Plaintiff's treating physician, Bruce A. Barker, M.D., on the basis that "the limitations noted therein are extreme in light of the evidence." (*Id.*) At step five of the sequential process, relying on the VE's testimony, the ALJ found that Plaintiff was capable of performing his past relevant work as an automobile sales person and inventory manager. (*Id.* at 19.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 20.)

Plaintiff now argues that the ALJ committed reversible error by: (1) failing to properly evaluate and consider Plaintiff's use of a cane; (2) failing to properly evaluate the opinion of his treating physician, Dr. Barker; (3) assessing an RFC that is not supported by substantial evidence; and (4) failing to properly evaluate whether Plaintiff met or equaled Listings 1.02A or 1.06. (Pl.'s Statement of Errors, ECF No. 12.) The undersigned will limit discussion of the evidence to those portions directly relevant to Plaintiff's contentions of error.

---

sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

### III. RELEVANT EVIDENCE OF RECORD

**A. State Agency Medical Consultants**

State agency medical consultant Timothy Budnik, D.O. reviewed Plaintiff's claim at the initial level, and rendered an opinion on May 16, 2016. (*See* R. at 52–53.) His review included, *inter alia*, medical records from September 2015, December 2015, and January 2016. (*Id.*) Dr. Budnik found, in part, as follows:

> [Plaintiff] reports that he is unable to sit, stand or walk for long periods of time. He also alleges chronic pain syndrome. Per [medical records], his pain is minimal and he has been instructed to discontinue the use of his brace and to return to all activities as tolerated. While he may continue to require precaution with activities and exhibit some functional restrictions, his reported inability to perform prolonged sit, standing and walking is not consistent with the objective findings.

(*Id.* at 52.) As to the Plaintiff's capabilities and limitations, Dr. Budnik opined that Plaintiff could: lift/carry 20 pounds occasionally and ten pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; occasionally push/pull with the right lower extremity due to history of right[3] hip fracture with deformity; occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; and occasionally stoop, kneel, and crawl. (*Id.* at 52–53.)

State agency medical consultant William Bolz, M.D. reviewed Plaintiff's claim file on reconsideration, and gave his opinion on October 20, 2016. (*Id.* at 75–76.) In addition to the evidence available to Dr. Budnik, Dr. Bolz also reviewed medical records from August 2016. (*Id.*) Dr. Bolz' opinion mirrors that of Dr. Budnik. (*Id.*)

---

[3] As reflected in the ALJ's assessment of Plaintiff's RFC, the State agency medical consultants mistakenly noted a left hip fracture, when in fact Plaintiff suffered a right hip fracture. (R. at 16.) For ease of review, the mistake has been corrected here.

**B. Treating Physician, Bruce A. Barker, M.D.**

**1.      Treatment Records**

Dr. Barker has been Plaintiff's primary care physician since May 8, 2015.  (*Id*. at 460–61.)  Dr. Barker remarked in his treatment records from the initial visit that Plaintiff experienced persistent pain from a hip fracture sustained in February 2014.  (*Id*.)  Specifically, imaging showed a displaced fracture of the greater trochanter.[4]  (*Id*. at 462.)  At a follow-up visit on June 8, 2015, Dr. Barker prescribed medication and physical therapy to address the pain in Plaintiff's hip.  (*Id*. at 457.)  During a July 7, 2015 visit, Plaintiff reported that he is "[o]verall [ ] doing fair" and "is feeling like the therapy is helping," but "still has some pain and discomfort in that hip."  (*Id*. at 454–55.)  On August 11, 2015, Plaintiff reported to Dr. Barker that physical therapy "has helped quite a bit," but that he still requires the full allotment of his pain medications.  (*Id*. at 452–53.)

Plaintiff underwent surgery to repair the fracture on October 30, 2015.  At a November 9, 2015 follow-up visit, Dr. Barker noted that Plaintiff "had surgery, doing a lot better.  Pain is much better controlled.  . . .  They have him in an abductor brace and abductor pillows to hopefully increase the likelihood of proper union."  (*Id*. at 439–42.)  At their next appointment, on December 8, 2015, Dr. Barker recorded that Plaintiff wore a brace, but that his hip "[p]ain is definitely improved."  (*Id*. at 435–38.)  During a physical exam at that appointment, Dr. Barker noted decreased strength and range of motion in Plaintiff's right hip.  (*Id*.)  The following month, on January 11, 2016, Dr. Barker noted that "[p]ain in right hip is stable with current meds" and

---

[4] The greater trochanter is a large, bony protuberance by which muscles attach to the upper part of the femur. *See Femur, Anatomy*, Encyclopaedia Britannica, https://www.britannica.com/science/femur (last visited Apr. 14, 2020).

that Plaintiff reported that his pain averaged a "3" on a ten-point scale. (*Id*. at 431–34.) Dr.

Barker indicated that Plaintiff suffered a "gait problem" but did not elaborate. (*Id*.)

Plaintiff next visited Dr. Barker on May 12, 2016. (*Id*. at 427–30.) At that appointment,

Dr. Barker recorded the following:

> Here today for recheck multiple medical problems. Blood pressure is doing well, 130s over 80s. Denies any chest pain, shortness of breath, lightheadedness, dizziness. He has had progressively aching discomfort in his right leg. It has been progressing lately over the last week. It is now up to real pain. [Average] 4-5/10 with his meds. He has had some bruising down the leg. He denies falling, denies any trauma. He is not wearing his brace. He has had more trouble with range of motion. He has not seen his surgeon since January. No numbness or tingling with it.
>
> I reviewed his meds with him here today.
>
> OBJECTIVE
> Vital signs: As noted.
> General: Awake, in no acute distress.
> Heart: Regular rate and rhythm.
> Lungs: Clear.
> Right Leg: Some mild ecchymosis[5] and tenderness over the greater trochanter.
>
> IMPRESSION
> 1. Hypertension, well controlled.
> 2. Greater trochanteric fracture, status post open reduction/internal fixation. Questionable concern for hardware failure. We will get an x-ray to evaluate the hardware locations. Continue his anti-inflammatory. He takes a little bit of pain medicine at night and averages only 1 Vicodin a day at night to help him sleep. I think that is reasonable. He has current supply, and we are going to have him go back to see his surgeon, decide if other interventions are warranted.
>
> Otherwise, recheck here in 3 months unless he is having further problems.

(*Id*. at 427–30.) Importantly, Dr. Barker saw Plaintiff on June 2, 2016, and recorded

substantially the same, with an added note that Plaintiff requested Dr. Barker complete some

paperwork (the Medical Source Statement discussed in detail, *infra*) for Plaintiff's disability

---

[5] Ecchymosis is "a discoloration of the skin resulting from bleeding underneath, typically caused by bruising." Lexico, https://www.lexico.com/en/definition/ecchymosis (last visited Apr. 16, 2020.)

application. (*Id*. at 422–26.) In addition, Dr. Barker noted the plan for Plaintiff's hip fracture as "[s]table will continue current medication regimen." (*Id*.) On August 30, 2016, Dr. Barker noted that Plaintiff "[o]verall feels pretty good. Average about a 3/10 on the pain in his hips, as long as he takes his meds regularly." (*Id*. at 469–73.) Dr. Barker's subsequent treatment records generally reflect a *status quo* with respect to Plaintiff's hip pain, with some worsening when the temperature drops. (*Id*. at 477, 487, 533, 545–46, 559, 577, 608–09.)

Throughout their relationship, Dr. Barker generally notes normal physical exam findings. However, following Plaintiff's surgery, Dr. Barker observed decreased strength and range of motion in Plaintiff's right hip. (*See, e.g., id*. at 435–38, 510–15.) He also diagnosed Plaintiff with chronic pain disorder associated with the right hip. (*See, e.g., id*. at 559.) Although Dr. Barker's treatment records are sparse with respect to Plaintiff's physical capabilities, he does occasionally note, without elaboration, that Plaintiff exhibits "gait problems." (*See, e.g., id*. at 510–15, 545–46, 559, 608–09.) Dr. Barker also noted that Plaintiff reported during a January 21, 2018 visit that "[o]ccasionally it is hard for him to get in and out of a car." (*Id*. at 577.) Dr. Barker's treatment records make no mention of Plaintiff's use of, or need for, a cane or other mobility-related assistive device.

### 2. Medical Opinion

Dr. Barker completed a Medical Source Statement on June 2, 2016. (*Id*. at 415–20.) Therein, he opined that Plaintiff could: occasionally lift up to 20 pounds; occasionally carry up to ten pounds; sit for four hours in an eight-hour workday, and for one hour at a time; stand for three hours in an eight-hour workday, and for 30 minutes at a time; walk for one hour in an eight-hour workday, and for five minutes at time; occasionally push/pull; occasionally operate right foot controls; occasionally climb stairs and ramps but never ladders or scaffolds; and never balance, kneel, crouch, or crawl. (*Id*. at 415–18.) Alongside a section titled "Environmental

8

Limitations," Dr. Barker wrote-in a comment that "[Plaintiff] has to stop after 2 hrs and rest hip."[6] (*Id.* at 419.) Dr. Barker further opined that Plaintiff required a cane to ambulate "at times" and could ambulate 100 yards without a cane. (*Id.* at 416.) As to Plaintiff's ability to engage in activities of daily living, Dr. Barker opined that Plaintiff cannot walk a block at a reasonable pace on rough or uneven surfaces, but can: shop (albeit, limited); live without a companion; ambulate without using a wheelchair, walker, or two canes/crutches; use public transit; prepare meals and feed himself; maintain personal hygiene; and sort, handle, and use paper files. (*Id.* at 420.) Dr. Barker cites Plaintiff's non-union hip fracture and non-response to surgery as a reason for these limitations. (*Id.* at 418.)

## C. Orthopedic Surgeon, Sanjay Mehta, M.D.

The ALJ also considered treatment records from Sanjay Mehta, M.D., the orthopedic surgeon who attempted to repair the fracture in Plaintiff's right hip. At a post-operative follow-up appointment on November 19, 2015, Dr. Mehta noted that Plaintiff was using crutches and an abduction brace. (*Id.* at 377–78.) He instructed Plaintiff to "continue with wearing of the brace for 6-8 weeks' time." (*Id.*) At a January 26, 2016 visit, Dr. Mehta advised Plaintiff "to [discontinue] brace wear today and he may [proceed] with all activities as he can tolerate." (*Id.* at 412–13.) Dr. Mehta's records do not mention Plaintiff's use of or need for a cane.

## D. Plaintiff's Mother's Written Statement

The ALJ also considered a statement submitted by Plaintiff's mother, dated August 22, 2017. (*Id.* at 280.) The statement provides, in part, as follows:

> It is hard for [Plaintiff] to sit for very long and also is not able to stand for a long period of time. I notice that he has difficulty in climbing stairs. He does not sleep well and is up a lot during the night. . . . There is no way that I can say how long he would not be able to work. Not being able to sit for any length of time nor stand

---

[6] It is unclear whether Dr. Barker intended this limitation to apply to all activities, all environmental conditions, or a subset of the environmental conditions.

for any period of time. . . . I know that right now he is doing his own cooking and laundry. [Plaintiff] likes to fish, but sitting and standing is a problem.

(*Id.*)  The ALJ ultimately gave the statement "little weight" on the basis that the severity of limitations noted (*i.e.*, that Plaintiff is unable to sit or stand for "any period of time") is unsupported by other evidence of record and is both internally inconsistent and inconsistent with other pieces of evidence.  (*Id.* at 18.)

### E.  Plaintiff's Hearing Testimony

Plaintiff testified before the ALJ at the June 21, 2018 hearing.  (*Id.* at 28–43.)  There, he testified that he is not able to walk more than 100 yards without resting, or get in and out of vehicles easily, on account of his hip.  (*Id.* at 35.)  He further testified that he can stand for 30 minutes, at most, and sit for an hour, at most.  (*Id.* at 36.)  As to his daily activities, Plaintiff testified that he regularly feeds his birds, waters his flowers, and is able to dress and bathe himself.  (*Id.* at 41.)  Of note, Plaintiff testified that he uses crutches to get into and out of the bathtub.  (*Id.*)  Plaintiff did not otherwise mention a cane or any other assistive device in his testimony.

### IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.    ANALYSIS

As previously noted, Plaintiff advances four contentions of error: (1) that the ALJ failed to properly consider and account for Plaintiff's use of a cane; (2) that the ALJ failed to properly evaluate the opinion evidence of his treating physician, Dr. Barker; (3) that the RFC assessed by the ALJ is unsupported by substantial evidence; and (4) that the ALJ failed to properly evaluate whether Plaintiff met or equaled Listings 1.02A or 1.06. For the reasons discussed below, the undersigned finds that each of Plaintiff's contentions of error lacks merit.

A.    **The ALJ properly evaluated the opinion of Plaintiff's treating physician, Dr. Barker.**

Because the other three contentions of error rely, at least in part, on its outcome, the undersigned will first address Plaintiff's assertion that the ALJ improperly discounted the opinion of his treating physician, Bruce A. Barker, M.D.  (Pl.'s Statement of Errors at 9–16, ECF No. 12.)

An ALJ must consider all medical opinions that he receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(c), 416.927(c).  When a treating physician's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley*, 581 F.3d at 406 (internal quotations omitted).  If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating physician's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [a claimant's] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).  There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Plaintiff argues that the ALJ erred in discounting the opinion submitted by Plaintiff's treating physician, Dr. Barker.  The undersigned disagrees.  As noted above, Dr. Barker opined that Plaintiff was subject to numerous physical limitations on account of his hip fracture, and required the use of a cane.  (R. at 415–20.)  The ALJ assigned little weight to Dr. Barker's opinion.  (*Id*. at 18.)  The ALJ explained his reasoning as follows:

> The undersigned gives little weight to the opinion of Dr. Baker [*sic*], as the limitations noted therein are extreme in light of the evidence.  The evidence does not support the degree of limitation in sitting, standing, and walking nor the postural limitations noted by Dr. Baker [*sic*].  It does appear that the source relied on the claimant's subjective report of symptoms and limitations rather than the objective findings.  For example, noting that the claimant had difficulty with daily activities as well as requiring rest after two hours.  Dr. Baker [*sic*] did not cite to any specific objective findings in support of these limitations, noting only the diagnosis (nonunion of the hip fracture) without specific findings.  There is also no evidence to warrant the use of a cane, such as motor or sensory loss, reflex deficits, abnormal gait, atrophy, or similar findings.  Moreover, the contemporaneous examination revealed only mild bruising and tenderness (Exhibit 3F).

(*Id*.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Barker's opinion. The ALJ articulated the weight he afforded the opinion and properly declined to afford it controlling weight—specifically, because the opinion was unsupported by and inconsistent with other objective medical evidence in the record. *See Blakley*, 581 F.3d at 406 ("[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.") (internal quotation omitted). *See also* 20 C.F.R. §§ 404.1527(c)(2)–(4) (providing that more weight will be given to medical opinions that are consistent with the record as a whole and supported by medical findings); §§ 416.927(c)(2) – (4) (same). The undersigned therefore concludes that the ALJ did not violate the treating physician rule or otherwise err in his consideration and weighing of Dr. Barker's opinion.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff disputes the ALJ's findings, asserting instead that the severity of limitations in Dr. Barker's opinion *is* supported by medical findings and *is* consistent with the record. (Pl.'s Statement of Errors at 10, ECF No. 12.) Plaintiff points to medical records noting: decreased range of motion and strength after surgery (R. at 514); continued displacement of the fracture after surgery (*Id*. at 378); and a diagnosis of a chronic pain disorder associated with his right hip (*see, e.g., id*. at 560). However, the existence of some evidence in Plaintiff's favor does not mean that the ALJ's decision to discount Dr. Barker's opinion is unsupported by substantial evidence. Where the factual record could support two different conclusions, "the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-cv-1078, 2018 WL 2422035 at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, No. 1:17-cv-1078, 2018 WL 2416232 (N.D. Ohio May 29, 2018). *See*

*also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Plaintiff further argues that the ALJ improperly relied on the State agency consultants' opinions in discounting Dr. Barker's. (Pl.'s Statement of Errors at 12, ECF No. 12.) Specifically, Plaintiff alleges that the ALJ discounted Dr. Barker's opinion "simply because another physician [the State agency medical consultant] has reached a contrary conclusion." (*Id.*) This argument reflects a misreading of the administrative decision. The ALJ does not so much as mention the State agency medical consultants' opinions in explaining his decision to discount Dr Barker's opinion, and likewise gives no indication that the consultants' opinions played a role in that decision. Plaintiff's argument, therefore, fails.

In sum, it is **RECOMMENDED** that Plaintiff's contention of error related to the ALJ's evaluation of Dr. Barker's opinion be **OVERRULED**.

### B.    The ALJ properly considered Plaintiff's use of a cane.

In his Statement of Errors, Plaintiff asserts that the ALJ improperly evaluated Plaintiff's use of a cane under Social Security Ruling 96-9p and, as a result, erred by failing to include Plaintiff's cane as a limitation in his RFC. A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). If a cane is not medically required, it is not considered a limitation on a claimant's ability to work, *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002), and an ALJ is not required to incorporate the cane into the RFC. *Casey v. Sec'y of Health Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). *See*

*also Lowe v. Comm'r of Soc. Sec.*, No. 2:15-cv-2837, 2016 WL 3397428, at *6 (S.D. Ohio June

21, 2016).  Social Security Ruling 96-9p instructs as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  The burden is on the claimant to prove

through clinical evidence that a cane is medically required.  *Strain v. Comm'r of Soc. Sec.*

*Admin.*, No. 5:12-cv-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013).

In his Statement of Errors, Plaintiff argues that the ALJ improperly rejected evidence that

his cane was medically required.  (Pl.'s Statement of Errors at 8–9, ECF No. 12.)  Plaintiff

asserts that Dr. Barker's opinion that he medically requires a cane is consistent with and

supported by the record, including evidence that surgery failed to repair Plaintiff's fracture (*see*

R. at 377–78) and that Plaintiff required crutches immediately post-surgery (*Id*.).

The Commissioner counters that Plaintiff did not satisfy his burden of proving that he

required a cane and, therefore, the ALJ did not err in declining to incorporate such a limitation

into the RFC.  (Comm'r's Mem. in Opp'n at 9–10, ECF No. 14.)  In support, the Commissioner

points out that the ALJ considered and discussed various portions of the record that suggest

Plaintiff is not as reliant on his cane as he now alleges.  For example, the ALJ noted: that Dr.

Barker's June 2, 2016 exam (which took place contemporaneously with his authorship of the

medical opinion) noted only mild bruising and tenderness above the right hip (*Id*. at 10; *see also*

R. at 422–26); that Dr. Barker's treatment records from November 2015, May 2016, and August

2016, also reflect improvement and stability (*Id*. at 11; *see also* R. at 427–30, 439–42, 469–73);

and that Plaintiff's mother indicated in her written statement that Plaintiff is able to do his own

cooking and laundry (*Id*. at 10; *see also* R. at 280).  Finally, the Commissioner asserts that the

ALJ was not required to accept Dr. Barker's opinion and, in fact, assigned the opinion "little weight" because it was inconsistent with and unsupported by other evidence of record, in particular noting a lack of medical findings that would warrant use of a cane. (*Id*. at 10. *See also* R. at 18.) As discussed in detail, *supra*, the ALJ reasonably discounted Dr. Barker's opinion.

The undersigned finds that the ALJ did not err in his consideration of Plaintiff's use of a cane or in declining to include use of a cane in the RFC. It is well-settled that "where there is conflicting evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.'" *Forester v. Comm'r of Soc. Sec.*, No. 2:16-cv-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) (quoting *Foreman v. Comm'r of Soc. Sec.*, No. 2:10-cv-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012)). The Court must instead determine whether the ALJ's decision is supported by substantial evidence. *See Rogers*, 486 F.3d at 241. In this case, as laid out by the Commissioner, the ALJ considered and discussed the various pieces of evidence bearing on Plaintiff's ability to ambulate without a cane. Importantly, the ALJ considered Dr. Barker's opinion—the lone piece of clinical evidence stating that Plaintiff's cane was medically required—and reasonably concluded that the opinion was worthy of little weight. In the absence of other clinical evidence indicating that Plaintiff's cane was medically required, the ALJ reasonably declined to include the cane in Plaintiff's RFC.

Plaintiff further argues that the ALJ failed to apply the standard established by SSR 96-9p and that his "focus on other types of evidence like motor or sensory loss was inappropriate." (Pl.'s Statement of Errors at 8, ECF No. 12.) This argument is likewise unavailing. As noted above, SSR 96-9p requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, at *7. The test, in other words, is two-pronged—requiring medical

17

evidence, first, of the need for a cane and, second, of the circumstances in which the cane is needed. A review of the administrative decision shows that the ALJ was dissatisfied by the showing on the first prong—where he cites, in particular, the lack of "evidence to warrant the use of a cane, *such as* motor or sensory loss, reflex deficits, abnormal gait, atrophy, or similar findings." (R. at 18) (emphasis added)—and did not reach the second prong of the analysis. The undersigned finds no error in the ALJ's consideration of the evidence bearing on whether the Plaintiff medically required a cane. Accordingly, it is **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED**.

**C.    The RFC assessed by the ALJ is supported by substantial evidence.**

The third issue Plaintiff raises in his Statement of Errors is that the ALJ's determination of his RFC is not supported by substantial evidence. (Pl.'s Statement of Errors at 16, ECF No. 12.) As previously noted, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except occasional right foot controls; occasional climbing of ramps or stairs but never any ladders, ropes, scaffolds; and occasional stoop, kneel, and crawl.

(R. at 16) (footnote omitted). The ALJ considered the evidence of record in assessing Plaintiff's RFC and ultimately concluded that Plaintiff is not as limited as he claims. (*Id*. at 17.) The ALJ adopted the State agency medical consultants' recommended abilities and limitations as the RFC, finding that they were "most consistent with and well supported by the evidence as a whole." (*Id*. at 18.)

Plaintiff argues that the ALJ erred in relying on the consultants' medical opinions to formulate the RFC—in particular, because (i) Dr. Budnik is an ear nose and throat ("ENT") specialist, (ii) the consultants did not consider Dr. Barker's opinion or medical records from 2017 or 2018, and (iii) other evidence of record supported greater limitations—and, as a result,

the RFC is not supported by substantial evidence. For the reasons enumerated below, the undersigned finds that the ALJ did not err in relying on the State agency medical consultants' opinions to formulate the RFC.

First, Plaintiff asserts that Dr. Budnik's opinion was not entitled to great weight because Dr. Budnik is an ENT specialist. (Pl.'s Statement of Errors at 13, ECF No. 12.) State agency medical consultants "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). Although it is true that a medical source's specialty is one factor used to weigh medical opinion evidence (*see* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5)), nothing in the Social Security regulations requires that an ALJ discount a medical opinion merely because of the source's specialization—particularly where such opinion is consistent with and supported by other evidence of record. Plaintiff's argument is, therefore, unpersuasive.

Plaintiff next asserts that the consultants' opinions were not entitled to great weight because the consultants did not review Dr. Barker's opinion or medical records created after they rendered their opinions. (Pl.'s Statement of Errors at 14, ECF No. 12.) In response, the Commissioner notes that an ALJ may rely on a consultant's opinion when it is out-of-date, so long as the ALJ considers the subsequent records and accounts for any relevant changes in the claimant's condition. (Comm'r's Mem. in Opp'n at 16–17, ECF No. 14) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009)). In this case, the administrative decision makes clear that the ALJ considered Dr. Barker's opinion and the full body of medical records. The ALJ specifically concluded that "[e]vidence received after the consultants' rendered their assessments does not support greater or additional limitations" than those noted therein. (R. at 18.) As a result, Plaintiff's argument is unavailing.

Finally, Plaintiff argues that "the ALJ determined that [Plaintiff] has the RFC to perform light work, despite substantial evidence of record suggesting a greater degree of limitation." (Pl.'s Statement of Errors at 17, ECF No. 12.)  The "substantial evidence" he cites in support is almost exclusively contained in Dr. Barker's opinion, which the ALJ reasonably discounted, as described, *supra*, in depth.

In sum, the undersigned finds that the ALJ's decision to rely on the State agency medical consultants' opinions was within the permissible "zone of choice," and the assessed RFC is supported by substantial evidence.  *Mullen*, 800 F.2d at 545.  It is therefore **RECOMMENDED** that Plaintiff's third contention of error be **OVERRULED**.

**D.     The ALJ properly determined that Plaintiff does not meet or equal Listings 1.02(A) or 1.06.**

Plaintiff's fourth and final contention of error is that the ALJ erred in assessing whether Plaintiff meets or equals Listings 1.02(A) (major dysfunction of a joint due to any cause) or 1.06 (fracture of the femur, tibia, pelvis, or one or more of the tarsal bones).  (Pl.'s Statement of Errors at 19, ECF No. 12.)  The undersigned disagrees.

At step three of the sequential evaluation process, a claimant has the burden of proving that he meets or equals all of the criteria of a listed impairment.  *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (clarifying that the burden of proving disability remains with the Social Security claimant at steps one through four and does not shift to the Commissioner until step five).  In determining whether a claimant satisfies the requirements of a listed impairment, the ALJ must "actually evaluate the evidence, compare it to [the relevant section of] the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review."  *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011).

20

Here, the ALJ determined that Plaintiff does not meet or equal Listings 1.02(A) or 1.06. [7]

(R. at 15–16.)  Both Listings require a claimant to showing that he has an "inability to ambulate

effectively."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 1.02, 1.06.  The regulations define an

"inability to ambulate effectively" as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
> . . .
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of

---

[7] To satisfy Listing 1.02(A), Plaintiff must have an impairment as follows:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
> [ ] Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.02.  To satisfy Listing 1.06, Plaintiff must have an impairment as follows:

> Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:
> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
> and
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.06.  In addition to proving each criterion of a listed impairment, the evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months."  20 C.F.R. § 404.1525(c)(4).

a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR Pt. 404, Subpt. P, App'x 1, § 1.00B(2)(b). The ALJ explained his reasoning as follows:

The undersigned considered the claimant's degenerative changes and fracture of the right hip under Listing 1.02, *Major Dysfunction of a Joint* (due to any cause). However, the objective medical evidence fails to document major dysfunction of any joint resulting in the inability to ambulate effectively. Likewise, under Listing 1.06, there is no evidence of ineffective ambulation as that is defined in 1.00B2b.

(*Id*.) The undersigned finds no error in the ALJ's analysis.

Plaintiff argues that the ALJ erred because his explanation was "extremely terse and conclusory" and "factually incorrect." (Pl.'s Statement of Errors at 19, ECF No. 12.) In furtherance of his argument that the ALJ's explanation was insufficiently voluminous, Plaintiff asserts that "the ALJ did nothing more than articulate the Listings that were being considered and claimed that there was no evidence of an inability to ambulate effectively." (*Id*. at 21.) However, the Sixth Circuit has made clear that there is no "heightened articulation standard" at step three when the ALJ's conclusion is supported by substantial evidence. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Plaintiff relies on Dr. Barker's opinion that Plaintiff "is limited in his ability to shop and drive and could not walk a block at a reasonable pace on rough or uneven surfaces." (Pl.'s Statement of Errors at 20, ECF No. 12.) The ALJ discussed—and reasonably discounted—this lonely evidence that Plaintiff was unable to ambulate effectively elsewhere in the administrative decision. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."); *Rainey-Stiggers v. Comm'r of Soc. Sec.*, No. 1:13-cv-517, 2015 WL 430193, at *6 (S.D. Ohio Feb. 2, 2015) ("[A]lthough the ALJ's Listing 1.02 discussion

22

is brief, the ALJ made sufficient factual findings elsewhere in her decision to . . . enable the Court to meaningfully review her decision.").  Plaintiff does not point to any different or additional medical evidence that would suggest he "cannot sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily life."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.  As a result, his argument fails.  It is **RECOMMENDED** that Plaintiff's fourth contention of error be **OVERRULED**.

## VI.    DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE